*67 The opinion of the court was delivered by
Gibson, J.
It is not disputed that in respect to the power in question the legislature has put the clerk of the Mayor’s Court of this city, on a footing with the prothonotaries of the Common Pleas; and these have express power to administer the oath by the terms of the arbitration act. The question, then, is whether this power may be delegated; and the case of the Commonwealth v. Greason, goes far to determine that it may; The argument on the other side is, that the administration of the oath being on a judicial proceeding, is a judicial act; and that the case is different in this respect from the Commonwealth v. Greason, inasmuch as the provisions of the registry act involve no judicial proceeding whatever, and consequently that the duty of the clerk of the Quarter Sessions was purely ministerial. The true line of distinction, I apprehend, lies between those cases where authority to administer an oath is an accessary of judicial power residing in the officer; and those where it is conferred specifically by an immediate grant. In the first, the officer cannot delegate the principal: in the second, there' is neither principal nor accessary, nor any thing but a naked act directed to be done by a statute. Now what judicial power is there supposed to reside in the person of a prothonotary? The nominating of arbitrators involves the exercise of discretion, and may, therefore, be supposed to approach nearer to a judicial act than any other within the scope of his duties. Arbitrators when appointed are judges, but those who appoint them are not necessarily so. A power of appointment is of an executive not of a judicial nature, otherwise the governor, who appoints judges and all other officers, would be what he unquestionably is not, a judicial instead of an executive magistrate. It furnishes no reply that even he cannot delegate his powers. His office is a high public trust, for which he.is chosen on account of personal fitness; and for that reason it can, for the most part, be executed only in person. But even the executive may delegate his powers where they are purely ministerial and do not call for the employment of any personal qualification; as for instance the power of administering judicial oaths, (the identical power in question,) which although it maybe exercised by him in person, is invariably intrusted to others by virtue of a dedimus protestatem. But, however this may be, it is certain that inferior offices which involve no peculiar trust, may be executed by deputy; and such I take to be the office of prothonotary of the Common Pleas, or clerk of the May- or’s Court of this city. In construing statutes, regard must be had to public convenience as an object of primary consideration, and how far this will be promoted by the construction which I have indicated, may be judged by the practice that has immemorially prevailed. The duties of almost every prothonotary in the state, are performed either wholly or in part, by clerks, who act under *68 a parol authority, and often in the absence of the principal; nor care it be otherwise as long as the principal shall be subject to those contingencies which happen to all men. Sickness may prevent him from executing his office in person;' whilst the business of suitors may be too urgent to admit of delay, and were they to await his recovery, the right of appeal for instance might be frustrated by his inability to take the necessary bail and administer the oath within the period presented by law. Nor can an inference unfavourable to the argument be raised from the fact that the power of substitution has been conferred on registers of wills in express terms. These are to every intent judicial officers, and such a provision was therefore not only expedient but indispensable. But this, on the other hand, discloses the opinion of the legislature as to the requirements of public convenience in similar cases; for, had the legislature supposed that prothonotaries were destitute of the power in question., it is impossible to doubt that they would have been invested with it as readily as were the registers-of wills. The conclusion from all this is, that the Mayor’s Court erred in quashing the appeal.
Judgment reversed, and the record remitted, with directions to reinstate the appeal.